**BREIT LAW, P.C.**
**Michelle G. Breit – SBN 021439**
9375 E. Shea Blvd, Suite 100
Scottsdale, Arizona 85260
Telephone: 480-336-2800
Email: mbreit@breitlawgroup.com

*Attorneys for Plaintiff THE ARIZONA*
*SPORTS FOUNDATION*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The Arizona Sports Foundation, an Arizona Nonprofit Corporation<br><br>                    Plaintiff<br><br>    *v.*<br><br>Fiesta Bowl, an Arizona nonprofit corporation; James E. Raftery, an individual<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT FOR TRADEMARK INFRINGMENT; TRADEMARK DILUTION, ARIZONA COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff the Arizona Sports Foundation, doing business as Fiesta Bowl, alleges for its complaint against defendants James E. Raftery and Fiesta Bowl, Inc. (jointly "Defendants"), on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

### NATURE OF THE ACTION

1.      This is an action for trademark infringement, trademark dilution, false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1051, et seq.; and trademark infringement and unfair competition under Arizona common law. The Arizona Sports Foundation ("TASF" or "Plaintiff") seeks equitable and monetary relief and damages from Defendants due to Defendants' knowing and unlawful use of the mark FIESTA BOWL for charitable fundraising activities (or otherwise), which is likely to cause confusion, is false and misleading, and is likely to dilute the distinctive value of Plaintiff's instantly recognizable and famous FIESTA BOWL mark.

**THE PARTIES**

2.      Plaintiff is an Arizona nonprofit corporation with its principal place of business in Maricopa County, Arizona. Plaintiff does business as "Fiesta Bowl."

3.      Defendant Fiesta Bowl, Inc. ("DFB") is an Arizona nonprofit corporation with its principal place of business in Mesa, Arizona.

4.      Defendant James E. Raftery ("Raftery") is an individual residing in Mesa, Arizona. On information and belief, Raftery is a founder, director and/or officer of DFB. In addition, Raftery is the registered agent for DFB.

**JURISDICTION AND VENUE**

5.      This is an action for trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Arizona common law trademark infringement and unfair competition.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because trademark infringement is a federal question under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

7.      This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, as the facts underlying Plaintiff's state law claims are substantially related to Plaintiff's federal Lanham Act claims

8.      This Court has personal jurisdiction over Defendant Raftery because he resides in Arizona and, on information and belief, engages in business in Arizona.

9.      This Court has personal jurisdiction over DFB because DFB is an Arizona nonprofit corporation, with its principle place of business in Mesa, Arizona and it conducts business in Arizona.

10.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) (2) because a substantial part of the events giving rise to the claims occurred and are occurring in this judicial district.

## THE ARIZONA SPORTS FOUNDATION
## AND ITS FAMOUS FIESTA BOWL TRADEMARK

11.     Plaintiff TASF was formed and incorporated in April 1969 for the purpose of bringing to and hosting in Phoenix, Arizona an annual National Collegiate Athletic Association (NCAA) football bowl game. In April 1971, NCAA approved TASF's application for an Arizona-based bowl game. Shortly thereafter, TASF adopted the name FIESTA BOWL for the game and began doing business as FIESTA BOWL. Plaintiff has been doing business as "Fiesta Bowl" ever since.

12.     On December 27, 1971, the Fiesta Bowl's first game was played at Sun Devils Stadium in Tempe, Arizona. The Fiesta Bowl game has been played in Arizona every year since.

13.     In 1974, the Fiesta Bowl began being televised nationally. In 2019, the Fiesta Bowl drew 21.2 million viewers, resulting in the most-watched college football playoff semifinal not played on New Year's Day.

14.     Today, the Fiesta Bowl organization holds two annual bowl games in Arizona, as well as community events throughout the year using the name FIESTA BOWL

15.     Since 1971, TASF (doing business as Fiesta Bowl) has supported Arizona organizations and communities.  The Fiesta Bowl's mission is to strive to create a positive economic impact for Arizona and focus on the community while having fun.  The Fiesta Bowl donates to nonprofit organizations across Arizona focusing on its three pillars of youth, sports and education. In or about January 2012, the TASF began using the trademark FIESTA BOWL CHARITIES. Since 2012, TASF has contributed close to $20 million to hundreds of nonprofit organizations in Arizona.

16.    TASF has obtained a number of federal trademark registrations for marks comprised of and/or containing words FIESTA BOWL, including but not limited to those shown below:

| Mark | Reg. No. | Services | Reg. Date - (First Use) |
|---|---|---|---|
| FIESTA BOWL | 2,094,764 | conducting athletic competitions. | 9/9/97 (7/30/71) |
| FIESTA BOWL | 2,136,733 | clothing, namely, shirts, T-shirts, jerseys, sweatshirts, slacks, pants, sweatpants, jackets, skirts, dresses, shorts, ties, and infantswear, namely, cloth bibs, sundresses and booties; headwear, namely, hats, caps  and sun-visors; footwear, namely, shoes and socks. | 2/17/98 (7/30/97) |
| | 5,112,170 | Entertainment services, namely, organizing and staging an annual post-season intercollegiate football game. | 1/3/17 (12/27/71) |
| | 5,112,172 | Entertainment services, namely, organizing and staging an annual post-season intercollegiate football game. | 1/3/17 (12/27/71) |

| FIESTA BOWL CHARTIES | 5,490,284 | Charitable foundation services, namely, providing fundraising activities, supplemental funding, capital improvement funding, scholarships and financial assistance for programs and services of others. | 6/12/18 (1/2/12) |
|---|---|---|---|
| | 5,574.835 | Charitable foundation services, namely, providing fundraising activities, supplemental funding, capital improvement funding, scholarships and financial assistance for programs and services of others. | 10/2/18 (4/4/17) |

Computer printouts of these registrations, taken from the U.S. Patent and Trademark Office's online database, are attached as **Exhibit 1**.

17.     U.S. Registrations 2,094,764 and 2,136,733 have become incontestable.

18.     Plaintiff's trademark registrations identified above and its common law rights in the mark FIESTA BOWL are collectively referred to herein as the "FIESTA BOWL mark."

19.     Plaintiff has expended substantial time, effort, and money over the course of almost five decades advertising, marketing and promoting FIESTA BOWL services through a variety of national media, including television, radio, Internet (including on its website www.fiestabowl.org), direct mail and print advertisements.

20.     Plaintiff also promotes its FIESTA BOWL name and mark through various high-profile sponsorships, including, for example (1) the prestigious PlayStation Fiesta

Bowl football game, (2) Desert Financial Fiesta Bowl Parade, Presented by Cheez-It and (3) Fiesta Bowl Par 3 Challenge Presented by Chapman Automotive. In previous years, the Fiesta Bowl put on the bowl game with Sunkist (1986-1990), IBM (1993-1995) and Tostitos (1996-2014) as title sponsors.

21.    As a result of this extensive use and promotion of the FIESTA BOWL mark, Plaintiff has developed significant and extensive goodwill in the FIESTA BOWL mark in Arizona and nationally. The FIESTA BOWL mark has become well-know and famous by virtue of extensive public exposure and the national televising of the FIESTA BOWL football game and other events, such as the Fiesta Bowl Parade.

22.    Plaintiff's rights in its FIESTA BOWL mark date back at least as early as 1971 and long predate DFB's corporate registration and use of the FIESTA BOWL mark and name.

## DEFENDANTS' WRONGFUL ACTS

23.    On July 25, 2011, DFB filed Articles of Incorporation with the Arizona Corporation Commission registering its nonprofit organization under the name "FIESTA BOWL."  Attached hereto as **Exhibit 2** is a printout of DFB's Articles of Incorporation from the records of the Arizona Corporation Commission's website.

24.    According to the Arizona Corporation Commission's records, Defendant James Raftery is an incorporator, director, president and statutory agent of DFB.

25.    As stated in DFB's Articles of Incorporation, DFB is using the name FIESTA BOWL within the United States in connection with "charitable purposes to serve the public interest and common good."

26.    On information and belief, since at least 2011, DFB has offered charitable services under the FIESTA BOWL mark and name and has raised money or has solicited charitable donations using the FIESTA BOWL mark.

27.    Mr. Raftery, as President of DFB, has actively and knowingly caused and directed DFB to use the FIESTA BOWL mark in a manner that is likely to cause consumer confusion and which has caused DFB to infringe the FIESTA BOWL mark.

28.     On October 23, 2019, Plaintiff's counsel sent DFB a letter addressed to Mr. Raftery, demanding the DFB and Raftery promptly cease use of the FIESTA BOWL mark and name.

29.     On or about October 30, 2019, DFB responded by letter confirming DFB has a website accessible by others on the Internet and has received charitable contribution using the FIESTA BOWL name. In its response letter, DFB states that it would not cease use of the FIESTA BOWL mark and name and, in fact, threatens to increase its use of the mark with a plan to "actively promote Fiesta Bowl" upon Mr. Raftery's impending retirement.

**INJURY TO THE ARIZONA SPORTS FOUNDATION**

**AND THE PUBLIC**

30.     Defendants' unauthorized use of the FIESTA BOWL mark and name is likely to cause confusion, mistake, and deception as to the source or origin of DFB, its nonprofit business, and/or is charitable activities with TASF dba Fiesta Bowl, its services, and its nonprofit and charitable activities

31.     By using the FIESTA BOWL mark, Defendants falsely convey that DFB's services are approved by Plaintiff, misleading the public, who should be free from such deceptive trade practices when making decisions regarding charitable donations.

32.     Defendants' actions described above are likely to dilute the distinctiveness and value of Plaintiff's famous FIESTA BOWL mark.

33.     Defendants' unauthorized use of the FIESTA BOWL mark and name have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure TASF, the FIESTA BOWL mark, TASF's reputation and good will associated with its mark, and the public's interest in being free from confusion, mistake and deception.

34.     Defendants knew, or should have known, that their unauthorized uses of the FIESTA BOWL mark and name violate TASF's rights in the FIESTA BOWL mark, Defendants have thus acted knowingly, willfully, in reckless disregard of TASF's rights, and in bad faith.

35.     TASF has no adequate remedy at law.

## CAUSES OF ACTION

### Count I – Trademark Infringement (15 U.S.C. § 1114)

36.     TASF realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

37.     Without Plaintiff's consent, Defendants used and continue to use in commerce reproductions, copies, and colorable imitations of Plaintiff's registered FIESTA BOWL mark in connection with the offering, distribution and advertising of services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section (1) of the Lanham Act,  15 U.S.C. § 1114(1).

38.     Such acts by Defendants cause Plaintiff irreparable harm as to which Plaintiff is entitled to a preliminary injunction and permanent injunction pursuant to 15 U.S.C. § 1116.

39.     Such acts further cause harm to Plaintiff for which Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1117, as well as the costs of any necessary corrective advertising.

40.     Defendants' actions constitute knowing, deliberate, and willful infringement of the FIESTA BOWL mark.

41.     Given that Defendants' conduct is intentional and willful, Plaintiff is entitled to an accounting of profits, attorneys' fees, and multiplied damages pursuant to 15 U.S.C. § 1117.

### Count II – Trademark Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A))

42.     Plaintiff realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

43.     Defendants' actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of DFB, DFB's services and/or

goods, and or Defendants' activities by or with Plaintiff, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44.     Defendants' unauthorized and tortious actions have also deprived and will continue to deprive, Plaintiff of its ability to control the consumer perception of the services offered by Plaintiff under the federally registered FIESTA BOWL mark, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

45.     Such acts by Defendants cause Plaintiff irreparable harm as to which Plaintiff is entitled to a preliminary injunction and permanent injunction pursuant to 15 U.S.C. § 1116.

46.     Such acts further cause harm to Plaintiff for which it is entitled to recover actual damages pursuant to 15 U.S.C. § 1117, as well as the costs of any necessary corrective advertising.

47.     Defendants have willfully adopted a mark confusingly similar to Plaintiff's FIESTA BOWL mark, and their acts of continued infringement constitute willful infringement.

48.     Given that Defendants' conduct is intentional and willful, Plaintiff is entitled to an accounting of profits, attorneys' fees, and multiplied damages pursuant to 15 U.S.C. § 1117.

### Count III – Trademark Dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c))

49.     Plaintiff realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

50.     Plaintiff's FIESTA BOWL mark is famous, as the term is used in 15 U.S.C. § 1125(c), and was famous before Defendants' first use of FIESTA BOWL based on, among other things, the inherent distinctiveness and federal registration of the FIESTA BOWL mark, and the extensive nationwide use, advertising, promotion, and recognition of that mark.

51.     Defendants' actions, as described above, are likely to dilute the distinctive quality and harm the reputation of Plaintiff's famous FIESTA BOWL mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Action of 2006.

### *Count IV – Common Law Trademark Infringement and Unfair Competition*
### *(Arizona Common Law)*

52.     Plaintiff realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

53.     Defendants have no right to use the FIESTA BOWL mark in connection with its goods or services, yet Defendants have passed off their services to the public as if they are the services of Plaintiff.

54.     Defendants' actions described above create the impression in the mind of the public that Plaintiff is responsible for the quality and performance of DFB's services or is otherwise affiliated, connected or associated with DFB, its services, and/or its nonprofit activities. Defendants have acted with intent to deceive the public as to the source of DFB's services, and the public has been confused or deceived as to the true source of DFB's services and its right and authority regarding use of the marks.

55.     Defendants' acts constitute common-law trademark and trade name infringement of Plaintiff's proprietary rights in its FIESTA BOWL mark, misappropriation of Plaintiff's goodwill in the mark, and unfair competition under the common law of the State of Arizona.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant the following relief:

A.      That the Court enter injunctive relief, ordering that Defendant DFB, as well as its officers, agents, servants, employees, attorneys, subsidiaries, and all others in active concert or participation with them, are enjoined and restrained from further infringing on Plaintiff's FIESTA BOWL Mark;

1    B.    That the Court award Plaintiff damages, an accounting of profits, and

2  attorneys' fees and costs;

3    C.    That the Court award Plaintiff multiplied damages because of Defendants'

4  intentional and willful wrongful conduct; and

5    D.    That the Court award such further relief as is merited under the law and

6  equity.

7                          **<u>DEMAND FOR JURY TRIAL</u>**

8    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

9  trial by jury of this action on all issues properly triable by a jury.

10   DATED this 18th day of May, 2020.

11                                   **BREIT LAW, P.C.**

12  _____

13                                   ___*/s/ Michelle G. Breit*_____
                                     Michelle G. Breit (SBN 021439)
14                                   9375 E. Shea Blvd., Suite 100
                                     Scottsdale, Arizona 85260
15                                   Telephone: 480-338-2800

16                                   *Attorneys for Plaintiff THE ARIZONA SPORTS*
                                     *FOUNDATION*
17                                     –

18

19

20

21

22

23

24

25

26

27

28